IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00194-KDB-SCR

| | |
|---|---|
| YUFAN ZHANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| | ) |
| UNITED HEALTH GROUP, INC., et. al., | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendant' Motion to Dismiss (the "Motion") (Doc. No. 11), as well as the parties' briefs and exhibits. (Doc. Nos. 12-15, 21-23 & 27).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss for lack of personal jurisdiction be granted.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Yufan Zhang ("Zhang") alleges that Defendants United Health Group, Inc. ("UHG") and Sujatha Duraimanickam ("Duraimanickam") wrongfully terminated his employment in November 2016, and committed fraud and defamation during the lawsuit that Plaintiff previously filed in the United States District Court for the District of Minnesota for age discrimination and defamation. (Doc. No. 1 at 6; Doc. No. 12 at 3-4); see also Zhang v.

1

UnitedHealth Group, Inc., No. 18-1454, 2021 WL 1617146 (D. Minn. Apr. 26, 2021), aff'd No. 21-2056, 2021 WL 6137359 (8th Cir. Dec. 29, 2021), cert. denied 143 S. Ct. 206 (2022). Additionally, Plaintiff asserts that UHG breached its employment contract with Plaintiff by failing to compensate his remaining Paid Time Off ("PTO") at the time of termination, refusing to sell UHG stock in accordance with UHG's Employee Stock Purchase Plan ("ESPP"), and failing to match his 401(k) account contributions prior to termination. (Doc. No. 1 at 9-10).

Plaintiff is a former employee of UHG and was under the management of Duraimanickam. (Doc. No. 12 at 1). Plaintiff is a resident of North Carolina as of either July or September 2021,[1] having previously been a resident of Minnesota during the entire period of his employment with UHG. (Doc. No. 1 at 6).

UHG is a multinational health insurance and services corporation organized under the laws of Delaware with its principal place of business located in Eden Prairie, Minnesota. (Doc. No. 21 at 5; Doc. No. 13 at 1). UHG has offices and employees located in North Carolina, provides insurance services in North Carolina, and conducts advertising targeted toward North Carolina residents within North Carolina. (Doc. No. 23 at 9). Duraimanickam is a former Web Development Manager who worked for UHG until May 4, 2023, and was Plaintiff's manager from January 2016, until his termination of employment in November 2016. (Doc. No. 14 at 1). Duraimainickam is a resident of Minnesota. Id.

In December 2014, UHG hired Plaintiff to work beginning in January 2015. (Doc. No. 12 at 2). Prior to Plaintiff's hiring, he received an offer letter and Employment Arbitration Policy

---

[1] There are inconsistencies in the record regarding the timeline of Plaintiff's relocation to North Carolina. In the Complaint, Plaintiff stated that he relocated to North Carolina in September 2021. (Doc. No. 1 at 6). However, Plaintiff's original and amended Memorandum in Opposition to Defendants' Motion to Dismiss or Compel Arbitration stated that he relocated to North Carolina in July 2021. (Doc. No. 21 at 5; Doc. No. 23 at 6). In either scenario, Plaintiff moved to North Carolina after appealing to the Eighth Circuit but before its decision was published. (Doc. No. 21 at 4). The exact month of relocation does not affect this Court's analysis regarding personal jurisdiction.

2

("Arbitration Policy"). Id. The Arbitration Policy covered disputes over breach of contract, defamation and legal claims that "arise from or involves a claim under any federal, state or local statute, ordinance, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment." Id.

In or around November 2016, UHG terminated Plaintiff's employment. (Doc. No. 12 at 2). Plaintiff contends that his employment was terminated in retaliation for reporting an issue on a program led by Duraimanickam and refusing to falsify records to conceal the issue. (Doc. No. 23 at 4). Defendants maintain that Plaintiff's employment was terminated due to poor performance. (Doc. No. 12 at 2). On May 25, 2018, Plaintiff filed a complaint against Defendants in the United States District Court for the District of Minnesota, alleging age discrimination and defamation. (Doc. No. 21 at 3). On February 14, 2019, the District Court found that the Arbitration Policy was enforceable and granted Defendants' Motion to Compel Arbitration and stayed the District Court action pending arbitration. Zhang v. United Health Group, Inc., 367 F. Supp. 3d 910, 914, 918 (D. Minn. 2021). The parties arbitrated the case in August 2020, with a decision rendered in favor of Defendants on October 5, 2020. (Doc. No. 12 at 4).

Plaintiff filed a motion to vacate the arbitration award in the District Court in Minnesota, alleging that the award was procured by fraud on the part of Defendants and misconduct on the part of the Arbitrator. Zhang, 2021 WL 1617146 at *2. On April 26, 2021, the District Court found that Plaintiff did not satisfy the burden of proof for his claims and denied the Motion to Vacate. Id. at *3-*4. In May 2021, Plaintiff appealed the District Court's decision to the United States Court of Appeals for the Eighth Circuit. (Doc. No. 21 at 4). In either July or September 2021, Plaintiff—after filing the Notice of Appeal but before the Eighth Circuit published its decision—purchased a home in and relocated to North Carolina. Id. at 5.

On December 29, 2021, the Eighth Circuit affirmed the District Court ruling. Zhang, 2021 WL 6137359. In July 2022, Plaintiff petitioned for writ of certiorari to the Supreme Court of the United States. Zhang v. United Health Group, Inc., No. 22-35, 2022 WL 2716903 (U.S. Jul. 28, 2022). On October 3, 2022, the Supreme Court denied certiorari. Zhang, 143 S. Ct. 206. Plaintiff petitioned for a rehearing, which was denied by the Supreme Court on December 5, 2022. (Doc. No. 21 at 6).

In November 2022, prior to the Supreme Court denial for a rehearing, Plaintiff—residing in North Carolina—contacted UHG regarding compensation for his remaining PTO, ESPP options and 401(k) account contributions that he did not receive following the termination of his employment. Id. In November 2023, Plaintiff contacted UHG to reiterate his requests for the outstanding compensation. Id. In both instances, UHG denied owing any compensation to Plaintiff following his termination of employment. Id.

On December 5, 2023, Plaintiff filed the instant Complaint against Defendants in this Court. (Doc. No. 1). In January 2024, Plaintiff attempted to serve Defendants by personally e-mailing and physically mailing a copy of the summons and complaint to a UHG Employee Relations Case Manager. (Doc. No. 5; Doc. No. 6). The Employee Relations Case Manger was not an officer, director, or managing agent of UHG and was not authorized to accept service on UHG's behalf. (Doc. No. 13 at 1). In February 2024, Plaintiff personally e-mailed a copy of the summons and complaint to Duraimanickam. (Doc. No. 14 at 2).

Now, Defendants, in their pending Motion, ask the Court to dismiss Plaintiff's Complaint, (Doc. No. 1) for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Federal Rule of Civil Procedure 12(b)(3), and insufficient service of process

4

under Federal Rule of Civil Procedure 12(b)(5). (Doc. No. 11). In the alternative, the Defendants ask the Court to Compel Arbitration. Id.

Having concluded that the Court lacks personal jurisdiction over both Defendants, as discussed below, the Court need not reach the requests to dismiss for improper venue and insufficient service of process, or the alternative request to compel arbitration. See Malone v. Breggin, No. 3:22-cv-00063, 2024 WL 1315910, at *7 (W.D. Va. Mar 27, 2024) (finding the Court need not rule on the merits of the case "when it was clear there was no personal jurisdiction over Defendants").

## II. DISCUSSION

### A. Standard of Review

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) (citing 2A Moore's Fed. Prac. ¶ 12.07[2.2]). However, like here, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); see also Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676; see also Universal Leather, LLC, 773 F.3d at 558. However, courts need not assume the truth of allegations in a pleading which are contradicted

5

by affidavit. Wolf v. Richmond Cnty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984); Clark v. Remark, 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir. 1993) (unpublished table decision).

## B. **Personal Jurisdiction**

"It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citing Stover v. O'Connell Assocs. Inc., 84 F.3d 132, 134 (4th Cir. 1996)). Accordingly, "North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, governs the reach of federal courts in North Carolina over out-of-state defendants, subject to the federal constitutional constraints of the Due Process Clause of the Fourteenth Amendment on the state's application of its long-arm statute." True Homes LLC v. Clayton Homes, Inc., No. 3:18-CV-000345-KDB-DCK, 2020 WL 6528861, at *11 (W.D.N.C. Nov. 5, 2020). "Courts have long held . . . that North Carolina's long-arm statute extends to the maximum boundaries allowed by the Due Process Clause." Id. (citing English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990)); see also Universal Leather, LLC, 773 F.3d at 558; Ctr. for Cmty. Self-Help v. Self-Fin., Inc., No. 1:21-CV-862, 2023 WL 1779831, at *2 (M.D.N.C. Feb. 6, 2023) (citing Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977)).

North Carolina's long-arm statute provides, inter alia, "for jurisdiction over any validly served—defendant who 'is engaged in substantial activity within [North Carolina], see N.C. Gen. Stat. § 1-75.4(1)(d), or whose act or omission gave rise to the action claiming injury to person or property in North Carolina, see N.C. Gen. Stat. § 1-75.4(3)." Christian Sci. Bd. of Dirs. of First

6

Church of Christ, Scientist, 259 F.3d at 215. "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); see also UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009)).

Under the Due Process Clause, a court can have personal jurisdiction over a defendant in either of two ways: (1) "general personal jurisdiction over a defendant who has continuous and systematic contacts with the forum state regardless of whether the relevant conduct occurs," or (2) "specific personal jurisdiction, which requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." Wall Recycling, LLC v. 3TEK Glob., LLC, 497 F. Supp. 3d 30, 37 (M.D.N.C. 2020) (quoting Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011)); ALS Scan, Inc. v. Digit. Serv. Consultants, Inc. 293 F.3d 707, 711-12 (4th Cir. 2002). Plaintiff claims that this Court has personal jurisdiction over Defendants without specifying whether this Court has general or specific personal jurisdiction. (Doc. No. 1 at 6). Defendants argue that this Court does not have general or specific personal jurisdiction. (Doc. No. 12 at 8). As such, the undersigned will analyze both forms of personal jurisdiction.

C. **General Jurisdiction**

General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (internal quotations omitted). General jurisdiction exists only when the defendant

is essentially "at home" in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). The analysis for determining where a defendant is "at home" varies between corporate and individual defendants, requiring that each Defendant be analyzed separately.

**1. General Jurisdiction Claim Over Defendant UHG**

The "paradigm" forums in which a corporate defendant is "at home" for the purposes of general jurisdiction are the corporation's place of incorporation and its principal place of business. BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413 (2017). A corporation has just one principal place of business, which is most often where the corporation is headquartered when it is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92-93. The Supreme Court has explained that it is only in an "exceptional case that a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." BNSF, 581 U.S. at 413.

Plaintiff asserts that UHG has continuous and systematic contacts with North Carolina that satisfy general jurisdiction under North Carolina's long-arm statute and the Fourteenth Amendment. (Doc. No. 23 at 9). Plaintiff asserts that UHG is incorporated in "North Carolina with headquarters in Minnesota" and its principal place of business is "all 50 states in the United States." (Doc. No. 1 at 3). While UHG does conduct business in North Carolina, Plaintiff mischaracterizes UHG's location of incorporation and principal place of business.[2] UHG is incorporated under the laws of Delaware and has its principal place of business at its corporate headquarters in Eden Prairie, Minnesota. (Doc. No. 13 at 1). Thus, UHG is only considered "at

---

[2] When deciding a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the [C]ourt may also consider affidavits submitted by both parties." Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019). Since Defendants presented an affidavit contradicting the allegations regarding UHG's location of incorporation and principal place of business, this Court need not assume it to be true. Wolf, 745 F.2d at 908. (See also Doc. No. 13 at 1).

8

home" for the purposes of general jurisdiction in Delaware and Minnesota. BNSF, 581 U.S. at 413.

Plaintiff asserts that UHG's substantial business dealings within North Carolina constitute continuous and systematic contacts that allow this Court to exercise general jurisdiction over Defendant. (Doc. No. 23 at 9). Plaintiff supports his allegations by noting that UHG serves as one of the largest health insurance companies in North Carolina, maintains offices and employees within the state and actively advertises within the state. Id. UHG does not dispute its business presence within North Carolina, arguing instead that in-state business is not sufficient to establish continuous and systematic contacts needed for general jurisdiction. (Doc. No. 22 at 4).

Precedent supports Defendant's argument, with the Supreme Court noting that "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring" in the forum state. BNSF, 581 U.S. at 414; see also Daimler, 571 U.S. at 138 (rejecting the contention that a court can exercise general jurisdiction on the basis that a corporation "engages in substantial, continuous, and systematic course of business" in the forum state); Goodyear, 564 U.S. at 927 (quoting Int'l Shoe Co., 326 U.S. at 318) (finding a corporation's "continuous activity of some sorts within a state is not enough to support the demand that a corporation is amenable to suit unrelated to that activity"). Since UHG is not considered "at home" in North Carolina, and precedent rejects the use of in-state business as a predicate for general jurisdiction, jurisdiction based on UHG's business dealings in North Carolina is analyzed under specific jurisdiction.

Plaintiff does not assert any exceptional case that would render UHG "at home in [North Carolina]." BNSF, 581 U.S. at 413. Instead, Plaintiff cites a recent Supreme Court decision upholding a Pennsylvania statute that allowed courts to exercise personal jurisdiction over out-of-

9

state corporations registered to do business within the state. Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 126 (2023). The decision in Mallory did not shift the Supreme Court's personal jurisdiction jurisprudence, but rather affirmed that states could compel out-of-state corporations to consent to personal jurisdiction as a condition to registering for business within the state. Id. at 146. However, this is distinguishable from the present case, as North Carolina has no such statute compelling consent from corporations and UHG has not consented or waived personal jurisdiction. See Bancredito Holding Co. v. Driven Administrative Services LLC, No. 5:23-CV-00575-M, 2024 WL 731956, at *3 (E.D.N.C. Jan. 8, 2024) ("North Carolina law, unlike that of Pennsylvania, does not require foreign corporations that register to do business in North Carolina to also consent to suit in the state"); Sebastian v. Davol, Inc., No. 5:17-cv-00006-RLV-DSC, 2017 WL 3325744, at *11 (W.D.N.C. Aug. 3, 2017) ("Without an indication that North Carolina statutorily requires a corporation to consent to general jurisdiction in order for that corporation to actually conduct business in North Carolina, this Court cannot find that Defendants consented to general jurisdiction in North Carolina.").

**2. General Jurisdiction Claim Over Defendant Duraimanickam**

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). A domicile is determined by an individual's physical presence in a state as well as "an intent to make the state a home." Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008) (citing Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989)). It is undisputed between the parties that Duraimanickam is a resident and citizen of Minnesota. (Doc. No. 1 at 2-3; Doc. No. 14 at 1). Nothing in the record indicates that Duraimanickam intends to live or work anywhere besides Minnesota. (Doc. No. 14). Thus, this Court cannot exercise general jurisdiction

10

over Duraimanickam.

In sum, the undersigned concludes this Court does not have general personal jurisdiction over Defendants. Any other assertions by Plaintiff regarding jurisdiction over Defendants must be evaluated under specific jurisdiction analysis.

### D. Specific Jurisdiction

A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985); Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (noting that as compared to general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."); Int'l Shoe Co., 326 U.S. at 319.

The Fourth Circuit evaluates the following factors to determine whether the exercise of specific jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claim[] arise[s] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, Inc., 963 F.3d at 351-52 (quoting Consulting Eng'rs Corp., 561 F.3d at 278); Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016) (quoting ALS Scan, Inc., 293 F.3d at 712); dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 133 (4th Cir. 2023).

As to this first prong, purposeful availment, courts require that the defendant create a "substantial connection" with the forum by "deliberately" engaging in activities with the forum state or by creating "continuing obligations" with the forum state's residents. Burger King Corp., 471 U.S. at 475-76. This requirement ensures that a defendant will not be subject to jurisdiction

11

based on "random," "fortuitous," or "attenuated" contacts with the forum or the "unilateral activity of another party or a third person." Id. at 475.

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." Consulting Eng'rs Corp., 561 F.3d at 278-79. Under this prong, courts consider the "effects test" such that personal jurisdiction is proper when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 398 n.7 (4th Cir. 2003) (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1988)).

In considering the third prong of specific personal jurisdiction, constitutional reasonableness, courts "ensure the appropriateness of the forum." Consulting Eng'rs Corp., 561 F.3d at 279. Courts consider factors including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id.

**1. Specific Jurisdiction Claim Over Defendant UHG**

As to the first prong, Plaintiff asserts that UHG has substantial business dealings within North Carolina that establish it has purposefully availed itself to the state's protections, benefits and privileges. (Doc. No. 23 at 12). UHG maintains offices and employees, provides health insurance services, and deliberately advertises their services to residents within North Carolina. Id. at 9. UHG does not dispute these contacts. (Doc. No. 22 at 4). These activities in North

12

Case 5:23-cv-00194-KDB-SCR   Document 33   Filed 06/28/24   Page 12 of 17

Carolina and activities directed at North Carolina demonstrate that UHG has created "substantial connection" with the forum and "continuing obligations" to residents of the forum state that satisfy the first prong of purposeful availment. Burger King Corp., 471 U.S. at 475-76.

As to the second prong, Plaintiff fails to demonstrate a sufficient connection that his claims "arise out of the activities directed at the forum" and that UHG's business activities in North Carolina "form the basis of the suit." Consulting Eng'rs Corp., 561 F.3d at 278-79. Examining the "effects test" for this prong, fraudulent misrepresentation is considered an intentional tort. Young v. FDIC, 103 F.3d 1180, 1190 (4th Cir. 1997). However, there is little in the record to indicate that Plaintiff "felt the brunt of the harm in the forum" or that UHG "aimed [its] tortious conduct at the forum" such that North Carolina could be viewed as "the focal point of the tortious activity." Carefirst of Md., 334 F.3d at 398 n.7 (citing IMO Indus., 155 F.3d at 265-66).

Plaintiff contends that he felt harm in both Minnesota and North Carolina. (Doc. No. 1 at 6). Plaintiff's supports this contention by noting that he had moved to North Carolina with his appeal still pending at the Eighth Circuit. (Doc. No. 21 at 12). Plaintiff alleges that the fraudulent conduct of Defendants caused the Eighth Circuit to rule against him. (Doc. No. 23 at 10). Although Plaintiff may have been adversely impacted by unfavorable appellate rulings while living in North Carolina, this is not enough to be considered the "brunt of the harm . . . such that [North Carolina] can be said to be the focal point of the harm." Carefirst of Md., 334 F.3d at 398 n.7 (citing IMO Indus., 155 F.3d at 265-66). The more appropriate "focal point of the harm" in this case would be Minnesota. Id.

UHG's conduct that Plaintiff's complaint is predicated on—the termination of employment, the alleged fraudulent conduct in arbitration and at trial and the withholding of benefits in violation of the employment contract—all occurred within Minnesota. (Doc. No. 12 at

13

2, 4; Doc. No. 21 at 4, 6); see also Zhang, 2021 WL 1617146 at *2. Plaintiff did not move to North Carolina until five years after UHG terminated his employment, and there is no indication in the record that Plaintiff sought employment or services from UHG while living in North Carolina. (Doc. No. 21 at 12). Thus, UHG had not "expressly aimed [its] tortious conduct" at North Carolina. Carefirst of Md., 334 F.3d at 398 n.7 (citing IMO Indus., 155 F.3d at 265-66). Even extending the alleged fraudulent conduct while appeals at the Eighth Circuit and Supreme Court were pending, Defendants' conduct would not have been aimed at North Carolina, as any allegations as to Defendants' conduct still stemmed from Plaintiff's relationship with Defendants that all originated in Minnesota. (Doc. No. 21 at 4-6).

Plaintiff also contends that his communications with UHG's Human Resource department while in North Carolina show harm directed within the forum state. (Doc. No. 23 at 10-11). These communications—initiated by Plaintiff—related to the outstanding employment benefits not provided to him at the time of termination and serve as further claims within the present Complaint. (Doc. No. 23 at 10-11; Doc. No. 1 at 9-10). However, these email communications do not sufficiently demonstrate either minimum contacts or harm directed at the forum state. Email communications between the parties, with one party residing within the forum state, is not enough to exercise personal jurisdiction. See Atl. Corp. of Wilmington v. TBG Tech Co., 565 F. Supp. 3d 748, 764-65 (E.D.N.C. 2021) (quoting Szulik v. TAG V.I., Inc., 783 F. Supp. 2d 792, 796 (E.D.N.C. 2011) ("mere communications sent from outside the forum do[] not establish presence in that jurisdiction."); Cricket Grp., Ltd. v. Highmark, Inc., 198 F. Supp. 3d 540, 544 (D. Md. 2016) ("although many contacts between the two parties occurred via email . . . such communications do not provide sufficient contacts to justify exercising personal jurisdiction."). This is especially true here when the subject of the communication was compensation for withheld

14

benefits from an employment contract entirely negotiated, accepted and performed within Minnesota. (Doc. No. 12 at 2). That Plaintiff waited six years after his termination of employment—and the conclusion of a lawsuit he could have joined these breach of contract claims—to raise these issues as a citizen of North Carolina does not give this Court the authority to exercise personal jurisdiction.

While UHG has some minimum contacts with North Carolina, these contacts are not the basis for this suit and thus it would be inappropriate for this Court to exercise personal jurisdiction over UHG.[3] Accordingly, the undersigned concludes that this Court lacks both general and specific personal jurisdiction over UHG in this matter and respectfully recommends that UHG's Motion to Dismiss for lack of personal jurisdiction be <u>granted</u>, and the claims against UHG be dismissed without prejudice.

### 2. Specific Jurisdiction Claim Over Defendant Duraimanickam

Plaintiff does not separately assert evidence for specific jurisdiction over Duraimanickam, seemingly including any assertion of purposeful availment to North Carolina in conjunction with UHG. (Doc. No. 12 at 12). Plaintiff failed to address this argument raised by Defendants in either his original or amended Memorandum in Opposition to Defendants' Motion to Dismiss or Compel Arbitration. (Doc. No 21; Doc. No. 23). Given the failure to address this argument, this Court will treat Defendants' argument as uncontested. <u>See</u> <u>Bigelow Corp. v. Hounds Town USA, LLC</u>, No. 3:23-CV-00134-FDW-SCR, 2023 WL 4939386, at *3 (W.D.N.C. Aug 2, 2023) (treating a defendant's argument that a plaintiff fails to address as uncontested). Thus, Plaintiff cannot satisfy the first prong, personal availment, and this Court cannot exercise specific jurisdiction over

---

[3] Given that Plaintiff cannot satisfy the second prong of specific jurisdiction analysis—that Plaintiff's claims arise out of Defendant's activities directed at North Carolina—it is unnecessary for the Court to fully analyze the third prong of Constitutional reasonableness.

Duraimanickam.

However, even if Plaintiff established Duraimanickam had sufficient minimum contacts for purposeful availment to North Carolina, Plaintiff fails to demonstrate that his claims arose from those contacts. As with UHG, even if this fraudulent conduct continued during the pending appeal cases, it could not be said that North Carolina could be considered the "brunt of the harm" or the "focal point of the harm" because Plaintiff's relationship with Duraimanickam involved Duraimanickam management of Plaintiff in Minnesota. Carefirst of Md., 334 F.3d at 398 n.7 (citing IMO Indus., 155 F.3d at 265-66). Thus, even if there was purposeful availment, Plaintiff's claims do not arise from any contacts with North Carolina and this Court cannot exercise specific jurisdiction over Duraimanickam.[4]

For these reasons, the undersigned concludes that this Court lacks both general and specific personal jurisdiction over Duraimanickam in this matter and respectfully recommends that Duraimanickam's Motion to Dismiss for lack of personal jurisdiction be granted, and the claims against Duraimanickam be dismissed without prejudice.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant' Motion to Dismiss (Doc. No. 11), be **GRANTED.** Specifically, Defendant's Motion be **GRANTED** for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and the case be **DISMISSED WITHOUT PREJUDICE**.

### IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact,

---

[4] Given that Plaintiff cannot satisfy the first prong or second prong, it is unnecessary for this Court to evaluate Constitutional reasonableness as related to Duraimanickam.

conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED.**

Signed: June 28, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge